# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM EUGENE WEBB,**

    **Plaintiff,**

**v.**                                        **CIVIL ACTION NO. 2:09cv107**
                                                   **(Judge Maxwell)**

**KUMA J. DEBOO, Warden,**

    **Defendant.**

## REPORT AND RECOMMENDATION

## I. Procedural History

The *pro se* plaintiff initiated this case on September 4, 2009, by filing a civil rights complaint against the above-named defendant pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On September 21, 2009, the plaintiff was granted permission to proceed *in forma pauperis*.

On September 23, 2009, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. A summons was issued that same day.

On November 24, 2009, the defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. A Roseboro Notice was issued on November 25, 2009. On February 8, 2010, the plaintiff filed a document styled "Motion to Deny Defendant's and Counter-Motion for Summary Judgment. Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and the plaintiff's Motion

for Summary Judgment.

## II.  The Complaint

At all times relevant to this complaint, the plaintiff was a federal prisoner incarcerated at FCI Gilmer, which is located in Glenville, West Virginia.  The plaintiff's complaint alleges that the defendant is requiring him to live under inhumane conditions in the form of triple bunking, in violation of his constitutional rights, a Federal Bureau of Prisons ("BOP") program statement, and state and federal regulations, including fire and building codes.  For relief, the plaintiff seeks $1,000,000.00 in damages and declaratory relief.

The plaintiff elaborates on his claims by stating that upon his arrival at FCI Gilmer, he was placed into B-1 Unit, under orders from the defendant, and housed in cell 127, a two-man cell which has been converted to a three-man cell.[1]  The plaintiff alleges that each two-man cell includes two beds, a sink, toilet, two lockers, and a writing table with chair, plus two additional chairs for inmate use. The plaintiff maintains that two-man cells have 54 square feet of unencumbered space, or 27 square feet per inmate.  Conversely, each three-man cell includes three beds, a sink, toilet, three lockers, a writing table, and three chairs for inmate use.  The plaintiff maintains that three-man cells have about 54 square feet of unencumbered space, or 18 square feet per inmate.

The plaintiff also alleges that in three-man cells, the bottom bunk, which is where he is assigned, has only two feet of head clearance which prevents him from sitting up in bed and has

---

[1] According to the complaint, Gilmer has three buildings which are designated for housing prisoners.  Each building has four units, for a total of twelve units with 64 cells per unit.  The plaintiff alleges that six of the units have all two-man cells, for a maximum inmate capacity of 128 inmates per unit.   The plaintiff further alleges that six of the units have 19 two-man cells that have been converted into three-man cells, for a maximum capacity of 147 inmates per unit.

resulted in his having minor head injuries on several occasions. The plaintiff further alleges that three-man cells have no book shelves for personal and legal books and other legal materials. Furthermore, due to poor plumbing, the plaintiff alleges that sewage water backs up daily in most housing units, literally flooding three-man cells which are closest to the flooding. According to the plaintiff, although the laundry-rooms in the lower housing units are where the flooding regularly begins, sewage water and waste backs up through commodes and sinks in the three-man cells, drinking fountains in the day room area, and floor drains in the common areas. The plaintiff alleges that affected areas are seldom, if ever, properly sanitized leading to a high number of documented staph infections and hepatitis cases. The plaintiff further alleges that there are only twelve showers in each of the units with three-man cells, well below the BOP's own regulatory mandate for housing 147 unmates. Moreover, the plaintiff alleges that in his own unit only six showers are operating to accommodate 147 inmates because the other six showers have been in disrepair for over six months. The plaintiff also alleges that ventilation is extremely poor within the three-man cells during lock-down periods and water fountains and ice machines in the units are deficient. The plaintiff also alleges that there are only two washing machines for the 147 inmates housed in each of the lower units. The plaintiff appears to allege that because the inmates are required to wash their own personal clothing items, which are not government issued, the insufficient number of washing machines contributes to the high infectious rate.

Finally, the plaintiff alleges that when inmates, including himself, receive infractions for the violation of institutional rules and policies, they are removed from their two-man cell and placed in an a three-man cell for an indeterminate period. Accordingly, the plaintiff alleges that the three-man cells are being used as a form of punishment.

**III. Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment**

In support of their Motions, the defendants allege that:

1. The plaintiff's allegation that defendant DeBoo has violated his constitutional rights by utilizing triple bunking is without merit;

2. Defendant DeBoo must be dismissed for lack of personal involvement in the facts and circumstances surrounding plaintiff's claims;

3. The defendant is entitled to qualified immunity; and

4. Any Bivens claims against the defendant in her official capacity are barred by sovereign immunity.

## IV. **Plaintiff's Response**

In response to the defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, the plaintiff has repeated the allegations in his complaint and provided case law which he believes refutes each of the defendant's claims for why this matter should be dismissed. In addition, he has made additional allegations regarding the impact that the three-man cells, and resulting overcrowding, has caused. Among those claims are his assertion that at least one to two institutional emergency lock downs occur each week as the result of fights and altercations between inmates and staff. The plaintiff maintains that competition for limited resources, such as showers, toilets, telephones, and other housing unit facilities are the source of compounded frustrations which often lead to elevated acts of aggression. The plaintiff also alleges that a lack of seating room in the inmate dining hall resulted in a serious confrontation on November 28, 2009, between Black and Spanish inmates which almost led to a full scale riot. As a result of this and other prior and similar incidents in the dining hall, the facility has been forced to operate well off schedule. Specifically, the plaintiff alleges that meals have taken twice as long, and as a result, hourly controlled movement including general work call, facilities work call,

and educational hourly classes are regularly a half hour later than normal and fewer. The plaintiff also alleges that for the past year, the Medical Department has revised its sick call system, and inmates must now wait days and even weeks for an initial evaluation by a medical practitioner, regardless of their condition. The plaintiff contends that the death rate, per capita, in comparison to other prisons, both BOP and state facilities, is much higher at FCI Gilmer simply because of staff inability to effectively and efficiently diagnose and treat these often documented serious conditions. In addition to his own assertions, the plaintiff has submitted his own affidavit and joint declarations of several inmates housed in three man cells, which reiterate the allegations made by the plaintiff regarding overall conditions at FCI Gilmer.[2]

## V. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the

---

[2]The joint declarations are carbon copies of the plaintiff's affidavit and are signed by inmates housed in the A-2 Unit, B-1 Unit, B-2 Unit, and C-1 Unit.

... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt

rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## VI. ANALYSIS

### A. Cruel and Unusual Punishment

The undersigned has viewed the plaintiff's complaint as stating a claim under the Eighth Amendment which prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976)(*quoting* Gregg v. Georgia, 428 U.S. 153, 173 (1976)). Accordingly, under the Eight Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 753 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), *quoting* Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard, and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when a "prison official's acts or omission...result in a denial of the minimal civilized measure of life's necessities." Id. at 298. .

Triple bunking is not per se unconstitutional. See Mathias v. Simpkins, No. 7:07cv-0031, 2007 WL 1577336 * 2 (W.D. Va. May 31, 2007)("It is clear that double or triple celling of inmates is not

8

per se unconstitutional."); Batts v. Martin, No. 87-7554, 1987 WL 38320 (4th Cir, July 1987)(unpublished);

Batts v. Martin, No. 87-7554, (1987 WL 38320 (4th Cir. July 27, 1987)(unpublished)(Double or triple celling of an inmate does not in and of itself constitute cruel and unusual punishment."); Smith v. Does, No. 5:06-cv-00065, 2009 WL 205099 *4-5 (S.D.W.Va. Feb. 6, 2009) (complaints by inmates in 12-man bubble cells that they had inadequate ventilation, no desk or chair, inadequate space between beds; inadequate head space for inmates on top bunk, poor lighting, poor inmate hygiene resulting in offensive odor in the bubble housing areas, and other complaints, were not violations of the Eighth Amendment.).

Moreover, placement in a three-man cell is not an atypical or significant hardship that would entitle the plaintiff to any Due Process protections. See Ihde v. Wallace, et al., No. 07-cv-714, 2008 WL 4643351 * 1 and 7 (W.D. Wis. March 26, 2008) (placement in triple cells is not an atypical or significant hardship as compared to the ordinary hardships of prison life and an inmate does not have a liberty interest in being moved from a three-man cell)(discussing Sandin v. Conner, 515 U.S. 472 (1995) and Bell v. Wolfish, 441 U.S. 520 (1979)).

Finally, to the extent that the plaintiff alleges that triple bunking violates a BOP Program Statement, the same does not rise to a constitutional violation. Therefore, it does not raise an appropriate claim for relief in a Bivens action. See McDonald, supra * 2; Grubbs v. Greer, Slip Opinion, 2008 WL 3896697 * 3(S.D. Miss. Aug. 19, 2008) (violation of P.S. 3420.09, or any program statement, does not rise to level of constitutional violation) (citing Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (mere failure to follow prison's internal regulations does not amount to constitutional violation); Bates v. Helman, 175 F.3d 1019, 1999 WL 160966 * 3 (7th Cir. 1999)

9

(violation of program statement does not rise to the level of a constitutional violation.)

However, despite the fact that triple bunking, in and of itself, is not sufficient to merit relief in a Bivens action, it is clear, even by the defendant's own admission, that triple bunking is the result of overcrowding. "[O]vercrowding, with all its consequences, can reach such proportions that the impact of the aggregate effect amounts to cruel and unusual punishment.". Johnson v. Levine, 588 F.2d 1378, 1380 (4th Cir. 1978). As recited above, the plaintiff has alleged numerous results of the overcrowding at FCI Gilmer. Specifically, he alleges that:

1. due to poor plumbing, sewage water backs up daily in most housing units, literally flooding three-man cells which are closest to the flooding;

2. although the laundry-rooms in the lower housing units are where the flooding regularly begins, sewage water and waste backs up through commodes and sinks in the three-man cells, drinking fountains in the day room area, and floor drains in the common areas;

3. affected areas are seldom, if ever, properly sanitized leading to a high number of documented staph infections and hepatitis cases;

4. there are only twelve showers in each of the units with three-man cells, and in his own unit only six showers are operating to accommodate 147 inmates because the other six showers have been in disrepair for over six months;

5. ventilation is extremely poor within the three-man cells during lock-down periods and water fountains and ice machines in the units are deficient;

6. there are only two washing machines for the 147 inmates housed in each of the lower unit, and because inmates are required to wash their own personal clothing items, which are not government issued, the insufficient number of washing machines contributes to a high infectious rate;

7. at least one to two institutional emergency lock downs occur each week as the result of fights and altercations between inmates and staff;

8. the competition for limited resources, such as showers, toilets, telephones, and other housing unit facilities are the source of compounded frustrations which often lead to elevated acts of aggression;

9. a lack of seating room in the inmate dining hall resulted in a serious confrontation on November 28, 2009, between Black and Spanish inmates which almost led to a full scale riot.

10. the dining facility has been forced to operate well off schedule, that meals have taken twice as long, and as a result, hourly controlled movement including general work call, facilities work call, and educational hourly classes are regularly a half hour later than normal and fewer;

11. the Medical Department has revised its sick call system that has resulted in inmates must now wait days and even weeks for an initial evaluation by a medical practitioner, regardless of their condition;

12. the death rate, per capita, in comparison to other prisons, both BOP and state facilities, is much higher at FCI Gilmer simply because of staff inability to effectively and efficiently diagnose and treat these often documented serious conditions.

The defendant has failed to address any of these allegation; instead focusing solely on the issue of triple bunking. The undersigned believes that the cumulative effect of these conditions, if true, would state a claim for cruel and unusual punishment. However, the undersigned is also mindful that the plaintiff has not alleged that **he** has suffered any significant physical or emotional injury resulting from these conditions. Accordingly, for this reason only, the undersigned is of the opinion that the

plaintiff has failed to state a viable Bivens cause of action.[3]

## VII. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss, on in the Alternative, for Summary Judgment (Doc. 19) be **GRANTED;** the plaintiff's Counter Motion for Summary Judgment (Doc. 26) be **DENIED;** the plaintiff's Motion for a Calendar Call (Doc. 28) be **DENIED**; and the plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on

---

[3]White v. Gregory, 1 F.3d 267, 269 *4th Cir, 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious physical or mental injury resulting from the conditions of confinement).

the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 18, 2010

   /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE